STATE OF NORTH CAROLINA v. LLOYD S. HEATH AND PHILLIP N. SUTTON

No. 848SC644

(Filed 5 March 1985)

1. Searches and Seizures § 20— search warrant—probable cause—information properly considered by magistrate

A magistrate issuing a search warrant can base a finding of probable cause only on statements of fact confirmed by oath or affirmation of the party making the statement, or on information which the magistrate records or contemporaneously summarizes in the record. G.S. 15A-244; G.S. 15A-245(a).

2. Searches and Seizures § 26— search warrant—insufficient information for probable cause

Information which the magistrate could properly consider under G.S. 15A-244 did not provide a substantial basis for concluding that probable cause existed for issuance of a warrant to search defendants' apartment for narcotics where the only information presented upon oath or affirmation was an officer's affidavit based on tips from informants received by other officers; the affiant did not personally verify the tips; corroborative police surveillance was undertaken by two other officers who did not appear before the magistrate or make sworn statements which he could consider; a statement in the application that the affiant "has received information from concerned citizens" was untrue; and the reference to "concerned citizens" did not meet the applicable standards for veracity and basis of knowledge, and this deficiency was not compensated for by other reliable information.

APPEAL by the State from *Small, Judge.* Order entered 16 April 1984 in Superior Court, LENOIR County. Heard in the Court of Appeals 13 February 1985.

On 13 April 1983 Capt. Brooks of the Kinston Police Department received a phone call from the manager of Will-O-Wisp Apartments complaining of unusual traffic in and out of one apartment. The manager stated that she had been told there were drugs in the apartment. Officer Simms conducted a surveillance of the apartment the same day and Officer Webb continued the surveillance the following day. On 15 April 1983 Dispatcher Cahoon

received an anonymous tip in which the caller stated she "went over there [i.e. to defendant Heath's apartment] one time . . . . He had all kinds of speed, he had acid, he had marijuana . . . ." On the basis of the two phone calls and police surveillance, Lt. Ingram obtained a warrant to search the apartment. The search revealed a variety of containers and substances which the officers believed to be illegal drugs.

Defendants were charged with conspiracy, possession with intent to sell and deliver a controlled substance, and keeping and maintaining a place for the use of controlled substances. Defendants moved to suppress the evidence seized in the search on the ground that the search warrant was invalid. The court granted the motion. Pursuant to G.S. 15A-979(c) and 15A-1445(b), the State appeals.

*Attorney General Edmisten, by Special Deputy Attorney General Charles J. Murray, for the State, appellant.*

*Marcus, Whitley & Coley, by William C. Coley, III, for defendant appellee Heath.*

*Bob D. Worthington for defendant appellee Sutton.*

WHICHARD, Judge.

The trial court made findings of fact which we summarize as follows:

1. Ingram swore to the search warrant application. With the application he presented two unsworn statements, one by Cahoon and one by Simms and Webb jointly.

2. The combined knowledge of Ingram, Cahoon, Simms, Webb, and Brooks was sufficient to establish probable cause upon application properly made. The officers, however, failed to follow the procedure prescribed in G.S. Ch. 15A, Art. 11.

3. Cahoon's statement erroneously summarized the tip he received due to his failure to review the transcript of the tape of the phone call. In finding probable cause, the magistrate had no authority to consider the unsworn written statements of Cahoon, Simms, and Webb.

4. Without more, the affidavit of Ingram consisted of conclusions unsupported by information sufficient to establish their credibility.

The scope of our review is to determine whether these findings are supported by competent evidence and whether they support the conclusion of law. *State v. Cooke*, 306 N.C. 132, 134, 291 S.E. 2d 618, 619 (1982). "[T]he duty of a reviewing court [the trial court, initially] is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-9, 103 S.Ct. 2317, 2332, 76 L.Ed. 2d 527, 548 (1983), citing *Jones v. United States*, 362 U.S. 257, 4 L.Ed. 2d 697, 80 S.Ct. 725 (1960). The trial court here concluded as a matter of law that the warrant was not based upon probable cause. The issue is whether the court properly granted defendants' motion to suppress on that basis. We hold that it did.

In resolving that issue first we determine whether information presented to the magistrate complies with G.S. 15A-244. *See State v. Arrington*, 311 N.C. 633, 636, 319 S.E. 2d 254, 256 (1984). Only information that so complies may support a magistrate's decision that probable cause exists to issue a search warrant. Second, we examine the information properly available to the magistrate to see whether it provides a sufficient basis for finding probable cause and issuing a search warrant. We examine that information under the "totality of circumstances" test reaffirmed by the Supreme Court of the United States in *Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed. 2d 527, and adopted by our Supreme Court in *Arrington*, 311 N.C. at 643, 319 S.E. 2d at 261, for resolving questions arising under Article 1, Section 20 of the Constitution of North Carolina with regard to the sufficiency of probable cause to support the issuance of a search warrant.

[1] Under our statutes a magistrate issuing a warrant can base a finding of probable cause only on statements of fact confirmed by oath or affirmation of the party making the statement, or on information which the magistrate records or contemporaneously summarizes in the record. G.S. 15A-244; G.S. 15A-245(a). The necessity of a sworn statement is consistent with existing case law. *See, e.g., Gates*, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed. 2d at 548 ("The task of the issuing magistrate is simply to make a practical, common-sense decision . . . given all the circumstances set forth in the *affidavit* before him . . . .") (emphasis supplied).

G.S. 15A-244 prescribes:

Each application for a search warrant must be made in writing upon oath or affirmation. All applications must contain:

. . . .

(3) Allegations of fact supporting the statement. The statements must be supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause . . . .

If someone other than the affiant has pertinent information, the issuing official may examine that person "on oath . . ., but information other than that contained in the affidavit may not be considered . . . in determining . . . probable cause . . . unless the information is either recorded or contemporaneously summarized in the record or on the face of the warrant . . . ." G.S. 15A-245(a).

[2] Here the magistrate did not personally examine Cahoon, Webb, or Simms on oath. He made no record or contemporaneous summary of information he received in addition to the information contained in Ingram's affidavit. Neither Cahoon's summary of the phone call he received nor Webb's and Simms' report of their surveillance activities was under oath. Cahoon testified as follows:

Q. Now, on the evening of April 15, did you accompany Lieutenant Ingram to the Magistrate's Office to get a warrant?

A. No, Sir, I did not.

Q. Did you ever appear before the Magistrate that day?

A. No, Sir.

Q. Did you sign this statement in the presence of a Notary?

A. No, Sir.

Q. In the presence of anyone that is authorize[d]?

A. No, Sir.

Q. Were you under oath at the time you signed it?

A. No, Sir[.]

Q. Were you under oath at the time you gave the information to Lt. or Captain Brooks?

A. No, Sir[.]

. . . .

Q. Mr. Cahoon, in the morning hours of April 15, 1983 when you received this [phone call] and subsequently when you wrote your summary, you did not have any indication at all that the summary would be used in the application for a Search Warrant, did you?

A. No, Sir.

Thus, under our statutory requirements the issuance of the warrant must rest solely upon the affidavit of Ingram, since it was the only evidence presented upon oath or affirmation. That affidavit reads:

The affiant has received information from concerned citizens who state that in the past week and the past 48 hours, they have seen and know that drugs are being sold at Apt 3219-OE Will-O-Wisp Apartment and the concerned citizens want to remain anonymous. The concerned citizens reported that there is a large amount of traffic goin[g] and coming from the apartment and that the visitors stay only a few minutes at each and one given time. The Kinston Police Department and Narcotics Division and Officers assigned have obtained a surveillance of said apartment and the action of the stated traffic are in affidavit [sic] attached.

This pattern which has been observed on the surveillance is similar to other drug traffic areas and relative offenses which drug arrest[s] have been made. The person described by the concerned citizens is known as Lynwood James Heath.

The court reviewed the sufficiency of the affidavit and found that without the unsworn statements of the other officers, which the magistrate and the court had no authority to consider, the facts in the affidavit amounted to unsupported conclusions. Having carefully examined the affidavit within the guidelines adopted

in *Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed. 2d 527, and *Arrington*, 311 N.C. 633, 319 S.E. 2d 254, we agree.

In *Gates* the police department received an anonymous letter setting out in detail the criminal activity of defendants husband and wife. See *Gates*, 462 U.S. at 225, 103 S.Ct. at 2325, 76 L.Ed. 2d at 540. The affiant personally verified the information contained in the letter before applying for a warrant and swore to information about which he had personal knowledge. Here, by contrast, the affiant did not personally verify the informants' tips. Corroborative police surveillance was undertaken by Simms and Webb who did not appear before the magistrate or make sworn statements which he could consider. While the warrant application, *supra*, states, "The affiant has received information from concerned citizens . . .," Ingram's testimony indicates otherwise:

Q. [A]s far as you knew, based on all the information that you had from the 13th through the 15th at the time you got the warrant, how many concerned citizens had stated that they had seen and knew that drugs were being sold at 3219-OE apartment?

A. To me, not any.

.   .   .   .

Q. From your personal knowledge, you didn't know that drugs were being sold?

A. Personal knowledge, no, sir.

In addition, the reference to "concerned citizens" does not meet the standards for veracity and basis of knowledge still relevant under *Gates. See Arrington*, 311 N.C. at 638, 319 S.E. 2d at 257. Under the totality of circumstances test, *Gates* states that an informant's veracity or reliability and his or her basis of knowledge are not to be accorded independent status. *Gates*, 462 U.S. at 230, 103 S.Ct. at 2329, 76 L.Ed. 2d at 545. Rather, a deficiency in one area may be compensated for by a strong showing in another. *Id*. As illustration, the Court cites particular combinations of reliability: an informant who fails to set forth the basis of his or her knowledge, but is known for unusually reliable predictions of certain criminal activity; an unquestionably honest citizen who reports activity which if fabricated would subject him or her

State v. Heath

to criminal liability; an informant with doubtful motive but who provides explicit and detailed description from first-hand observation. *Id.* at 233-34, 103 S.Ct. at 2329-30, 76 L.Ed. 2d at 545.

The *Gates* standard is not satisfied, however, by a mere conclusory statement that " 'affiants have received reliable information from a credible person . . . .' " *Id.* at 239, 103 S.Ct. at 2332, 76 L.Ed. 2d at 549, citing *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964). The reference to "concerned citizens" in the affidavit here is no less conclusory than the statement, *supra*, the Court in *Gates* rejects. Ingram testified as follows:

Q. Did you have any reason to believe the female who made the call on 4/15/83 was reliable?

A. Me personally?

Q. Yes Sir.

A. No Sir.

Q. Did you have any reason to believe [the apartment manager] was reliable?

A. As me talking to her, no sir.

Q. And without the officers['] investigation you had no reason to believe that the information [from] the girl on the phone on the 15th was truthful, did you?

A. No Sir.

This deficiency is not compensated for by other reliable information. On the contrary—the affidavit states "that in the past week and the past 48 hours [concerned citizens] have seen and know that drugs are being sold at" defendant Heath's apartment. The court found, however, and the evidence supports the finding, that this conclusion was based upon an erroneous summary by Cahoon of the tip he received due to his failure to "tak[e] the time to check his recollection of the evidence with a recording that had been made." According to the transcript of the tape of the phone call, the informant did not mention a forty-eight hour time frame or state that drugs were being sold. Rather, she said, "I know where there's a place in Kinston and a lot of drugs in there . . . I went over there one time but I didn't know it was that kind of place . . . ."

After reviewing these circumstances and the record as a whole we find the court's findings of fact supported by competent evidence and its conclusion of law properly based upon and consistent with those findings. In addition, we find no constitutional error in the court's conclusion that the search warrant was not based on probable cause. We therefore hold that the information which the magistrate could consider under G.S. 15A-244 did not provide a substantial basis for concluding that probable cause existed and that the motion to suppress was properly granted.

Affirmed.

Judges WELLS and BECTON concur.