STATE OF NORTH CAROLINA v. KENNETH RAY HYLEMAN

No. 8727SC543

(Filed 5 April 1988)

1. **Criminal Law § 84— invalid warrant—admission of seized evidence—good faith exception to exclusionary rule**

     Although an affidavit submitted to obtain a search warrant did not contain sufficient information to establish probable cause for issuance of the warrant, the trial court properly denied defendant's motion to suppress evidence seized in a search under the warrant because of the good faith exception to the exclusionary rule.

2. **Searches and Seizures § 39— warrant for residence—search of garage**

     Even though a garage was a separate building and a place of business, the garage could be searched as part of defendant's residence.

3. **Searches and Seizures § 39— execution of warrant—delay of inventory**

     A delay of three and one-half days between execution of a warrant and return of the inventory of the items seized was not unreasonable or prejudicial. N.C.G.S. § 15A-257.

4. **Searches and Seizures § 29— search warrant—showing time of issuance**

     Omission of the time of issuance of a search warrant above the signature of the magistrate was not prejudicial where the time of issuance was noted elsewhere on the face of the warrant. N.C.G.S. § 15A-241(1).

5. **Criminal Law § 90.1— State's impeachment of own witness—prior inconsistent statement**

     The trial court did not err in permitting the State to use a prior inconsistent statement to impeach its own witness where there was no showing that the prior statement was used under the guise of impeachment for the primary purpose of placing before the jury substantive evidence which was not otherwise admissible. N.C.G.S. § 8C-1, Rule 607.

6. **Narcotics § 4— trafficking in cocaine—sufficient evidence**

     The evidence was sufficient to support defendant's conviction of trafficking in cocaine by selling more than 28 grams thereof. N.C.G.S. § 90-95(h)(3).

     Judge BECTON dissenting.

APPEAL by defendant from *Ferrell, Judge.* Judgments entered 27 February 1987 in Superior Court, GASTON County. Heard in the Court of Appeals 7 December 1987.

This is a criminal action wherein defendant was charged in proper bills of indictment with trafficking in cocaine under G.S. 90-95(h)(3) and with possession of drug paraphernalia under G.S. 90-113.22.

The State's evidence tends to show the following: Detective William Durst of the Gaston County Police Department set up a meeting to buy cocaine from Gene Orendorff. At the meeting Durst purchased cocaine using cash. The serial numbers of the cash had previously been recorded by making photocopies of the bills.

Orendorff and another man, Jeff Manning, were to later deliver the cocaine. They were observed driving to a trailer park where they picked up a third man, Kenny Wood. Later, Detective Durst met with the three men to receive the cocaine. The men were then arrested. Both Orendorff and Wood made statements to the police. Wood told police that defendant had sold the cocaine to him and that he had given defendant the money earlier received from Durst.

Upon a search of defendant's residence, police found a set of triple-beam scales, a notebook, a 12-gauge shotgun, rolling papers, marijuana and cocaine cutting agents. Also found were bills with serial numbers matching those photocopied earlier by Detective Durst.

Before defendant's trial began, he moved to suppress the evidence. The motion was denied. The jury returned two verdicts of guilty and from sentences of 10 years for trafficking of cocaine and 12 months for possession of drug paraphernalia, defendant appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General G. Patrick Murphy, for the State.*

*Gray and Hodnett, P.A., by James C. Gray, for defendant, appellant.*

HEDRICK, Chief Judge.

[1] Defendant's first contention is that the trial court committed reversible error in denying his motion to suppress evidence seized by police. Defendant argues the search warrant was not issued with probable cause as required under the "totality of the circumstances" test of *Illinois v. Gates*, 462 U.S. 321, 103 S.Ct. 2317, 76 L.Ed. 2d 527 (1983). He bases this on his contention that the affidavit submitted to secure the search warrant does not have sufficient information to establish probable cause. The State

all but concedes the affidavit is insufficient, but argues the court did not err in denying the motion to suppress due to the "good faith exception" to the exclusionary rule.

The "good faith exception" is enunciated and elaborated on in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed. 2d 677 (1982). Our State recognized this "good faith exception" in *State v. Welch*, 316 N.C. 578, 342 S.E. 2d 789 (1986). We hold the trial court did not err in denying defendant's motion to suppress the evidence because of the good faith exception.

[2] Defendant further contends "the officers did not have a right to search [defendant's] garage, a licensed business in a premises separate from the residence home of the Defendant." Even though the garage was a separate building and a place of business, it could be searched as part of defendant's residence. *State v. Trapper*, 48 N.C. App. 481, 269 S.E. 2d 680 (1980).

[3] Defendant next argues a delay of three and one-half days between execution and return of the inventory of items seized was an undue delay in violation of G.S. 15A-257. The statute does not state a particular time for return of the inventory, and we hold that in this case the delay was not undue or unreasonable, and we can conceive of no prejudice.

Under G.S. 15A-242, defendant argues that several items were improperly seized. The statute allows for seizure of contraband or evidence of an offense. Pursuant to a lawful search warrant, officers have a right to seize any articles thought to be connected to the drug business of defendant. All items in this case were properly seized.

[4] Defendant also argues the search warrant fails to meet the requirements of G.S. 15A-246(1) in that the time of issuance is not found above the signature of the magistrate. Such an omission could be significant, but in this case there is no prejudice since the time of issuance was noted elsewhere on the face of the warrant.

[5] Defendant next argues the trial court erred by allowing impeachment of Wood, the State's witness. Wood was asked about his prior inconsistent statement to Detective Durst. Following Wood's denial of the statement, Durst testified as to what Wood told him. Defendant asserts that although G.S. 8C-1, Rule 607

allows the State to impeach its own witnesses by use of a prior inconsistent statement, the State "may not use such a statement under the guise of impeachment for the *primary* purpose of placing before the jury substantive evidence which is not otherwise admissible." *United States v. Miller*, 664 F. 2d 94, 97 (1981).

In this case, two witnesses had already testified as to Wood's involvement. Wood's actions were important to the State's case, and his testimony was needed. There is no showing that the prior inconsistent statement was used for any purpose other than impeachment. The State acted in good faith, and there was no error in allowing impeachment.

Finally, defendant argues the trial court erred in its motions to dismiss, to set aside the verdicts and for a new trial. In ruling on a motion to dismiss, the trial court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Lowery*, 309 N.C. 763, 766, 309 S.E. 2d 232, 235-36 (1983). If there is substantial evidence of these determinations, denial of the motion is proper. *Id.*

In considering whether this evidence is sufficient, the evidence is considered in the light most favorable to the State. *State v. Lowery*, 309 N.C. 763, 309 S.E. 2d 232 (1983).

[6] For a defendant to be convicted of trafficking in cocaine, he must be someone "who sells, manufactures, delivers, transports, or possesses 28 grams or more of coca leaves or any salts, compound, derivative or preparation thereof. . . ." G.S. 90-95(h)(3). In this case, the jury found defendant guilty of selling more than 28 grams of cocaine. There is ample evidence that defendant sold more than 28 grams of cocaine. For this reason, the motion to dismiss was properly denied.

Likewise, we find the motions to set aside the verdicts and for a new trial were properly denied since there was sufficient evidence for the verdicts. These arguments have no merit.

We hold defendant had a fair trial, free from prejudicial error.

No error.

Judge GREENE concurs.

Judge BECTON dissents.

Judge BECTON dissenting.

I dissent. The "bare-bones" conclusory affidavit for the search warrant does not aver that any controlled substances are, or ever were, at defendant's residence or even mention that the confidential informants were reliable. Further, the allegations in the affidavit, in my view, are so lacking in indicia of probable cause as to render official belief in its existence unreasonable, thus making the *Leon* "good faith exception" inappropriate. Moreover, the record suggests that the State's use of Wood's prior inconsistent statement was a subterfuge to get before the jury evidence not otherwise admissible.

I

The State did not concede that the affidavit was insufficient to establish probable cause. Indeed, arguing that Detective Durst had "within his personal knowledge sufficient facts to constitute probable cause but [was] unable to place all of the information in an application for a search warrant out of fear for the safety of an informant," State's brief, page 8, the State, nevertheless, asks this Court to uphold the search warrant as issued. I, for one, am unwilling to do so.

If it were permissible, an affiant could always embellish his story with "twenty-twenty" hindsight by saying, "I knew more than I told the magistrate." Consequently, our Courts and Legislature opted for a rule of law requiring the "information" to be contained in the affidavit or be "either recorded or contemporaneously summarized in the record or on the face of the warrant by the issuing official." N.C. Gen. Stat. Sec. 15A-245 (1983); *State v. Heath*, 73 N.C. App. 391, 326 S.E. 2d 640 (1985).

This rule of law was not followed in this case, but it is particularly applicable since the State's argument—that details "would have disclosed that Kenny Wood was a source of information"—is refuted by the record. Once defendant Hyleman was ar-

rested as the source of the two ounces of cocaine that were delivered to Detective Durst, Kenny Wood was necessarily exposed as the informant since defendant, according to the State, would not deal with anyone other than Kenny Wood. Moreover, Detective Durst's affidavit specifically names Kenny Wood as the person to whom Durst gave marked money for the two ounces of cocaine.

## II

Detective Durst testified at the suppression hearing that he was the only witness to appear before the magistrate and that his entire testimony was contained in the written affidavit. That affidavit is so lacking in information that no detached and neutral magistrate could reasonably conclude that contraband was in the place or on the person to be searched. As defendant points out in his brief, the defendant and his residence are not even mentioned in the affidavit, and a magistrate could have just as easily issued a search warrant for any residence in Gaston County. Even *Leon*, which established the "good faith exception" to the exclusionary rule, precludes use of the "good faith exception" when "the magistrate abandon[s] his detached and neutral role, [or] the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." 468 U.S. at 926, 82 L.Ed. 2d at 701. *Accord State v. Roark*, 83 N.C. App. 425, 350 S.E. 2d 153 (1986); *State v. Newcomb*, 84 N.C. App. 92, 351 S.E. 2d 565 (1987). In short, the majority has erroneously failed to apply the following language from *Leon* to the facts of this case:

> Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." . . . Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. (Citations omitted.)

468 U.S. at 923, 82 L.Ed. 2d at 699.

III

The transcript suggests that the District Attorney called the witness Wood solely for the purpose of impeaching him with an alleged prior inconsistent oral statement made to Detective Durst. Even the State concedes, on page 16 of its brief, that "[t]here is some indication in the record that the State knew before he was called that Wood was going to recant his previous assertions."

I do not quarrel with Rule 607 of the North Carolina Rules of Evidence which generally permits any party to attack the credibility of any witness. I am concerned with what may be a growing trend of using prior inconsistent statements as a subterfuge to get before the jury hearsay evidence not otherwise admissible. *See State v. Bell,* 87 N.C. App. 626, 362 S.E. 2d 288 (1 December 1987) in which this Court expressly disapproved the ruse whereby a party calls an unfriendly witness solely to justify the subsequent call of a second witness to testify about a prior inconsistent statement. *See also United States v. Webster,* 734 F. 2d 1191 (7th Cir. 1984) (court denied use of prior inconsistent statement to impeach witness when the sole purpose for calling a witness was to impeach his testimony by applying Rule 607 of the Federal Rules of Evidence). It is not enough to say, as the majority says, that "Wood's actions were important to the State's case, and his testimony was needed." *Ante,* page 427. Sometimes needed witnesses are not available. Sometimes the State cannot prove its case without inadmissible evidence. Courts should not change the rules because the testimony is needed.

Further, it is not germane to say, as does the majority, *ante,* page 427, that two witnesses had already testified as to Wood's involvement. First, these two witnesses were not with Wood at the relevant time and did not know where Wood got the cocaine. Equally important, although Detective Durst's affidavit avers that Wood and the two witnesses were kept under surveillance by law enforcement officials from 7:15 p.m. until 10:50 p.m. during which time the drugs were purchased on the night in question, Detective Durst admitted at the motion to suppress hearing that, from 8:15 p.m. until 10:25 p.m. during the time that the drugs were purchased, neither he nor other law enforcement officials had any idea of the whereabouts of Wood and the other two witnesses or

their car. More importantly, Wood himself acknowledged his involvement. He denied, however, having told anyone that he had purchased cocaine from defendant Hyleman, and he testified that he bought the cocaine from Billy Faulkner. Wood further testified that he purchased an automobile from defendant Hyleman on the night in question using $250 of the $1600 marked money, and that transaction was witnessed by a notary public who testified for defendant Hyleman.

## IV

Based on the above, I believe the trial court erred in denying defendant Hyleman's motion to suppress evidence and by allowing the State to use "a statement under the guise of impeachment for the *primary* purpose of placing before the jury substantive evidence which is not otherwise admissible." *United States v. Miller*, 664 F. 2d 94, 97 (5th Cir. 1981), *cert denied*, 459 U.S. 854, 74 L.Ed. 2d 106 (1982).