IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-523

Filed 18 February 2026

Scotland County, Nos. 21CR052104-820, 22CR000038-820, 22CR050183-820, 22CR050184-820

STATE OF NORTH CAROLINA

v.

RUSTY DEVON STRICKLAND

Appeal by defendant from judgments entered 8 November 2024 and 13 June 2025 by Judge Stephan R. Futrell in Scotland County Superior Court. Heard in the Court of Appeals 28 January 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Meghan E. Lock, for the State.*
>
> *J. Hunter Murphy, for the defendant-appellant.*

TYSON, Judge.

Rusty Devon Strickland ("Defendant") appeals from judgments entered on a jury's verdicts finding him guilty of attempted first degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, assault on a female, possession of a firearm by a felon, assault by strangulation, assault with a deadly weapon in the presence of a minor, and communicating threats. Our review discerns no error at trial. We vacate and remand the 8 November 2024 judgment for resentencing and vacate the 13 June 2025 judgment.

## I.  Background

Defendant; his wife, Nancy Caulder; and her four children lived in a "little cottage" located behind Jeanette Herlocker's home.  Herlocker is Caulder's mother.  Both residences were located on Herlocker's family property.

Caulder went to Herlocker's home around 10:00 am on 12 November 2021.  Caulder told Herlocker she wanted to leave Defendant.  Herlocker noted Caulder seemed anxious.

Herlocker told Caulder to bring her eight-year-old child up to her house to sit with her housekeeper.  Herlocker heard footsteps from her back deck.  Defendant entered the residence, went straight to Caulder, and the two began arguing.  Herlocker attempted to get Defendant and Caulder to go outside.  Defendant pushed Herlocker to the floor and punched her in the face.  Herlocker received a black eye.  While Herlocker was on the floor, Defendant pulled out a handgun and pointed it at her.

Defendant returned to his residence.  Jamie Locklear, who was a handyman, arrived on the property to work on the cottage.  Herlocker and Locklear observed Defendant taking firearms out of the cottage and placed them inside of a white van.  Defendant drove away.

Locklear observed Herlocker's injured eye and called 911.  Locklear took Caulder's four children to his home. When Caulder went to Locklear's home to pick up her children, Locklear heard Defendant's voice on Caulder's phone's speaker

saying he was going to kill Locklear and his wife and chop their baby's head off.

Locklear went back to the property and cottage on 5 February 2022. Locklear noticed the front door had been kicked in. Locklear also heard a child screaming inside the cottage. Locklear entered the cottage and observed Caulder on the floor being choked by Defendant. Caulder was turning blue in the face.

Defendant saw Locklear, pulled out and pointed a handgun at Locklear, who fell backwards. Defendant fired multiple shots, and one round struck Locklear in the leg. Defendant fled from the property. Locklear drove himself to the hospital for treatment and required surgery for his gunshot wound.

Defendant was indicted for assault on a female, assault by pointing a gun, and communicating threats for the 12 November 2021 crimes. Defendant was also indicted for attempted first degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, communicating threats, assault by strangulation, possession of a firearm by a felon, and two counts of assault with a deadly weapon in the presence of a minor for the 5 February 2022 crimes.

Prior to trial, the State filed a motion on 19 January 2024 to join the offenses at trial. The State asserted "the offenses are based on the same act or transaction or on a series of transactions connecting together or constituting parts of a single scheme or plan." Defendant opposed the State's motion, but withdrew his objection during jury selection. All offenses were joined for trial on 4 November 2024.

The State entered a voluntary dismissal to one count of assault with a deadly

weapon in the presence of a minor and one count of communicating threats. After the State rested, Defendant moved to dismiss all charges, offered no evidence, and did not testify.

The jury acquitted Defendant of assault by pointing a gun. Defendant was convicted of attempted first degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, assault on a female, possession of a firearm by a felon, assault by strangulation, assault with a deadly weapon in the presence of a minor, and communicating threats.

The State presented the aggravating factor of committing the offense in the presence of a minor on the attempted first degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, assault by strangulation, and possession of a firearm by a felon. The jury found the existence of the aggravating factor. *See* N.C. Gen. Stat. § 15A-1340.16(d)(13a) (2023).

Prior to sentencing Defendant's counsel stipulated he was a prior record level IV offender with 10 prior record level points. Defendant's convictions for assault with a deadly weapon with intent to kill inflicting serious injury was consolidated for judgment with his conviction for attempted first degree murder, and he was sentenced in the aggravated range to an active sentence of 275 to 342 months.

Defendant's conviction for assault with a deadly weapon in the presence of a minor, assault on a female, and communicating threats were consolidated for judgment with his assault by strangulation conviction and he was sentenced in the

aggravated range to an active sentence of 22 to 39 months. Defendant was sentenced to an active sentence in the aggravated range of 22 to 39 months for his possession of a firearm by a felon conviction. All sentences were to run consecutively. Defendant gave oral notice of appeal. The trial court made appellate entries on 8 November 2024. The record on appeal was filed with this Court on 2 June 2025, and the case was docketed.

The Department of Adult Corrections sent the trial court a letter identifying concerns with Defendant's sentences on 9 December 2024. The trial court issued a *Writ of Habeas Corpus Ad Prosequendum* for Defendant to return to the trial court for the correction of sentencing errors on 21 January 2025. Defendant never appeared and the trial court did not resentence Defendant. The trial court issued a subsequent *Writ of Habeas Corpus Ad Prosequendum* for Defendant to return to the trial court for correction of sentencing errors on 9 June 2025.

The trial court conducted a new sentencing hearing on 13 June 2025. Defendant's counsel stipulated he was a prior record level III offender with 8 prior record level points. Defendant's conviction for assault with a deadly weapon with intent to kill inflicting serious injury was consolidated for judgment with his conviction for attempted first degree murder and he was sentenced in the aggravated range to an active sentence of 230 to 288 months. Defendant was sentenced for his conviction of possession of a firearm by a felon in the aggravated range to an active sentence of 19 to 32 months. Defendant's convictions for assault on a female and

communicating threats were consolidated for judgment with his conviction for assault by strangulation, and he was sentenced in the aggravated range to 11 to 23 months. All sentences to run consecutively. The trial court arrested judgment on the conviction for assault with a deadly weapon in the presence of a minor. Defendant gave oral notice of appeal.

## II.   Jurisdiction

In addition to Defendant's prior oral notices of appeal, Defendant has filed a petition for writ of certiorari to review the judgments and sentences imposed by the trial court on 13 June 2025. "The jurisdiction of the trial court with regard to the case is divested . . . when notice of appeal has been given *and* the period described in (1) and (2) has expired." N.C. Gen. Stat. § 15A-1448(a)(3) (2023) (emphasis supplied). Subsection (1) provides "the period provided in the rules of appellate procedure for giving notice of appeal." N.C. Gen. Stat. § 15A-1448(a)(1) (2023). Our Rules of Appellate Procedure allow a written notice of appeal in a criminal case to be filed 14 days after entry of judgment. N.C. R. App. P. 4(a)(2). The trial court has jurisdiction until notice of appeal has been given and 14 days have elapsed.

Here, more than 14 days had passed and Defendant had entered oral notice of appeal from the 8 November 2024 judgments. The trial court had been divested of jurisdiction over this case. A judgment "is void *ab initio* . . . when it is issued by a court that does not have jurisdiction . . . [it] is a nullity and may be attacked either directly or collaterally, or may simply be ignored." *State v. Sams*, 317 N.C. 230, 235,

345 S.E.2d 179, 182 (1986) (citations omitted). Defendant's oral notice of appeal from his 13 June 2025 hearing is valid.

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2023). Defendant's petition for writ of certiorari is dismissed as moot.

### III.    Issues

Defendant argues he received ineffective assistance of counsel ("IAC") and the trial court prejudicially erred by allowing testimony of other bad acts. Defendant further argues the trial court erred in sentencing in the 8 November 2024 judgments and it lacked jurisdiction to remedy the errors by resentencing him on 13 June 2025.

### IV.    Ineffective Assistance of Counsel

Defendant argues he received IAC at trial, by his counsel withdrawing his objection to the State's motion to join these separate offenses; not filing any notices of defenses in accordance with N.C. Gen. Stat. § 15A-905(c) (2023); or making any arguments or requesting jury instructions on self-defense or the castle doctrine; and, by not calling Defendant to testify.

### A. Standard of Review

A defendant must satisfy the two-pronged test announced by the Supreme Court of the United States in *Strickland v. Washington*, in order to show IAC. 466 U.S. 668, 80 L. Ed. 2d 674 (1984). The test in *Strickland* for a defendant to show IAC has been adopted by the Supreme Court of North Carolina for state constitutional purposes. *State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241 (1985).

Defendant "must show that his counsel's conduct fell below an objective standard of reasonableness." *Id.* at 561-62, 324 S.E.2d at 248 (citing *Strickland*, 466 U.S. at 687-8, 80 L. Ed. 2d at 693).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.*

When reviewing a claim for IAC "this Court engages in a presumption that trial counsel's representation is within the boundaries of acceptable professional conduct." *State v. Roache*, 358 N.C. 243, 280, 595 S.E.2d 381, 406 (2004) (citation omitted). "We ordinarily do not consider it to be the function of an appellate court to second-guess counsel's tactical decisions[.]" *State v. Lowery*, 318 N.C. 54, 68, 347 S.E.2d 729, 739 (1986).

## B. Joinder

Joinder of two or more offenses for trial is proper where there is a transactional connection, and when doing so would not impair the defendant's right to a fair trial. N.C. Gen. Stat. § 15A-926 (2023); *State v. Perry*, 142 N.C. App. 177, 180-81, 541

S.E.2d 746, 747-48 (2001). This Court considers: "(1) the nature of the offenses charged; (2) any commonality of facts between the offenses; (3) the lapse of time between the offenses; and (4) the unique circumstances of each case," when reviewing a transactional connection between the offenses. *State v. Montford*, 137 N.C. App. 495, 498-99, 529 S.E.2d 247, 250 (2000).

Both assaults on Herlocker and Locklear occurred as a direct result of violent domestic incidents between Defendant and Caulder. Both victims were attempting to intervene and protect Caulder from Defendant. Both assaults involved the same witnesses. Locklear was present at both assaults, Herlocker was present at the first assault and present in the aftermath of the second. The facts associated with both offenses have a transactional connection and were properly joined under N.C. Gen. Stat. § 15A-926 (2023).

Defendant's allegations challenging joinder of offenses for trial fail both prongs in *Strickland*. 466 U.S. at 687-8, 80 L. Ed. 2d at 693. Defendant's argument is overruled.

### C. Self-Defense and Castle Doctrine

Defendant argues he received IAC by his counsel's failure to file any notice of defense under N.C. Gen. Stat. § 15A-905(c) (2023) or seeking for the trial court to provide jury instructions on self-defense or the castle doctrine.

The castle doctrine applies to "[t]he lawful occupant," the record establishes Defendant was not the lawful occupant of Herlocker's home. N.C. Gen. Stat. § 14-

51.2(b) (2023). Defendant is also not entitled to a self defense instruction as he was assaulting and choking Caulder, the property owner's daughter and "lawful occupant," of the "little cottage" when Locklear arrived. Defendant cannot meet the first prong of *Strickland*. 466 U.S. at 687-8, 80 L. Ed. 2d at 693. Defendant's argument is overruled.

## D. Defendant Not Testifying

Defendant further argues he received IAC by his counsel's failure to call for him to testify at trial. Defendant expressly decided not to testify after the trial court had conducted an extensive colloquy of his rights. Defendant's counsel presented a witness list to the State showing pretrial preparation had occurred. Defendant did not present any evidence to preserve the right to present the final argument to the jury. Our court does not "consider it to be the function of an appellate court to second-guess counsel's tactical decisions[.]" *Lowery*, 318 N.C. at 68, 347 S.E.2d at 739. Defendant's IAC argument is overruled.

## V.    Rule 404(b) - Evidence of Other Crimes

Defendant argues the trial court erred by failing to exclude unrelated evidence of Defendant smoking marijuana with Locklear.

### A.  Standard of Review

Our Supreme Court has held:

> When the trial court has made findings of fact and
> conclusions of law to support its 404(b) ruling . . . we look
> to whether the evidence supports the findings and whether

the findings support the conclusions. We review de novo the legal conclusions that the evidence is, or is not, within the coverage of Rule 404(b).

*State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012).

## B. Analysis

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such a proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2023).

The Supreme Court of North Carolina has repeatedly interpreted Rule 404(b) to be a rule of inclusion, and not exclusion. *Beckelheimer*, 366 N.C. at 131, 726 S.E.2d at 159. This inclusion of Rule 404(b) testimony or evidence is constrained by the requirements of similarity and temporal proximity of the evidence to the alleged bad acts. *State v. Al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002).

Admission of evidence under Rule 404(b) is "subject to but *one exception* requiring the exclusion of evidence if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Lyons*, 340 N.C. 646, 668, 459 S.E.2d 770, 782 (1995) (citation omitted).

During trial, Locklear testified about Defendant purportedly using marijuana

three times. The first time Locklear testified concerned an incident at a birthday

party, where Defendant was:

> very irritable, and I had you know, rushed out to the car
> and asked him to stay and eat some burgers and maybe
> drink some beer. And we were going to go behind my home
> and smoke a little marijuana.

Defendant failed to object.

Locklear later testified about another occasion where he and Defendant were

putting together bunk beds and they were "smoking a little marijuana." Later, during

questioning, Locklear responded to a question about his and Defendant's interactions:

"[W]e went looking for a little bit of marijuana. He proceeded to try to intimidate me,

telling me he had killed somebody and buried them under a tree[.]" Defendant then

objected and the trial court overruled this objection. The basis of the objection was

not stated in the record. Defendant only argues the trial court failed to exclude

unrelated evidence related to the marijuana and does not make any arguments about

Locklear's testimony about Defendant had "killed somebody."

Our Supreme Court has held "[w]here evidence is admitted over objection and

the same evidence has been previously admitted . . ., the benefit of the objection is

lost." *State v. Alford*, 339 N.C. 562, 570, 453 S.E.2d 512, 516 (1995).

Our appellate rules provide:

> In criminal cases, an issue that was not preserved by
> objection noted at trial and that is not deemed preserved
> by rule or law without such action nevertheless may be
> made the basis of an issue presented on appeal when the

judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C. R. App. P. 10(a)(4). Defendant does not argue on appeal the admission of this testimony, concerning marijuana after his counsel's previous failure to object or move to strike amounts to plain error. *See State v. Dennison*, 359 N.C. 312, 313, 608 S.E.2d 756, 757 (2005); *State v. Smith*, 269 N.C. App. 100, 105, 837 S.E.2d 166, 169 (2019).

Defendant instead argues he received IAC if this Court finds the objections were not specific and did not properly preserve this issue for appellate review. While the grounds where Defendant's counsel objected could reasonably be tied to Defendant telling Locklear he had previously "killed somebody" and not to the prior marijuana use, presuming, without deciding, the objection addressed Defendant's purported marijuana use, Defendant's objection was properly overruled. Defendant's counsel's purported failure to previously object to the two instances of purported marijuana use also does not meet either prong of *Strickland* to constitute IAC. 466 U.S. at 687-8, 80 L. Ed. 2d at 693. Defendant's argument is overruled.

## VI.   Sentencing

As noted above concerning Defendant's petition for writ of certiorari, the trial court was divested of jurisdiction when it entered the 13 June 2025 sentencing judgment. "When the record shows a lack of jurisdiction in the lower court, the appropriate action . . . [for] the appellate court is to . . . vacate any order entered without authority." *State v. Felmet*, 302 N.C. 173, 176, 273 S.E.2d 708, 711 (1981)

(citations omitted). The judgments entered on 13 June 2025 are vacated. This Court will review the sentences imposed on Defendant's properly appealed 8 November 2024 judgments.

Defendant argues, and the State concedes, Defendant had four prior class A1 or 1 misdemeanors and should have been sentenced on all felony judgments as a prior record level III; Defendant was improperly sentenced to 22 to 39 months, which is outside the range of sentences prescribed by N.C. Gen. Stat. 15A-1340.17 (2023) for the Class H Felony Assault by strangulation; Defendant was improperly sentenced to 22 to 39 months for the Class G Felony possession of a firearm by a convicted felon; and Defendant improperly received an additional record level point under N.C. Gen. Stat. § 15A-1340.17(b)(6) (2023). The erroneous judgments are vacated.

## A. Aggravating Factor

Defendant further argues the trial court erred by failing to distinguish its application of the aggravating factor on all charges in the assault by strangulation judgment. N.C. Gen. Stat. § 15A-1340.4(a)(1) (2023) provides: "Evidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation."

The aggravating factor was not given to the jury on the charge of assault with a deadly weapon in the presence of a minor. The charge of assault with a deadly weapon in the presence of a minor and the aggravating factor of in the presence of a minor is the same evidence. *See* N.C. Gen. Stat. §§ 15A-1340.16(d)(13a); 14-33(D)

(2023). Defendant's convictions for assault on a female and communicating threats can be consolidated for judgment with his conviction for assault by strangulation.

In *Tucker,* our Supreme Court held:

> Thus, when separate offenses of different class levels are consolidated for judgment, the trial judge is required to enter judgment containing a sentence for the conviction at the highest class. Accordingly, the trial judge is limited to the statutory sentencing guidelines, set out at N.C.G.S. § 1340.17(c), for the class level of the most serious offense, rather than any of the lesser offenses in that same consolidated judgment. . . .
>
> Determination of the convictions to which the sentencing guidelines apply becomes important for the application of aggravating factors. While "evidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation, and the same item of evidence shall not be used to prove more than one factor in aggravation," N.C.G.S. § 1340.16(d), where consolidated judgments are concerned, the analysis must go further. Any aggravating factors that are applied to the sentence will necessarily only apply to the offense in the judgment which provides the basis for the sentencing guidelines. Since the trial judge is required by the Structured Sentencing Act to enter judgment on a sentence for the most serious offense in a consolidated judgment, aggravating factors applied to the sentence for a consolidated judgment will only apply to the most serious offense in that judgment.

*State v. Tucker,* 357 N.C. 633, 637, 588 S.E.2d 853, 855 (2003).

Defendant's judgment only applied to his "most serious offense in that judgment," the assault by strangulation conviction, which could receive an aggravated sentence. Defendant's argument is overruled.

The trial court prejudicially erred in sentencing in the 8 November 2024

judgments. We vacate and remand to the superior court for a new sentencing hearing. Because we vacate Defendant's judgments, we do not review Defendant's sentencing phase IAC arguments, as the issue is not likely to recur on remand.

## VII. Conclusion

Defendant did not receive IAC. The trial court did not err in admitting testimony of Defendant's purported use of marijuana. Defendant received a fair trial free from prejudicial errors he preserved and argued.

As the State concedes, the trial court prejudicially erred in sentencing Defendant. The judgments are vacated and remanded solely for a new sentencing hearing at correct prior record levels and as consistent herein. *It is so ordered.*

NO ERROR AT TRIAL; JUDGMENTS VACATED AND REMANDED FOR RESENTENCING.

Chief Judge DILLON and Judge CARPENTER concur.